58 So.2d 336

**SUPER–COLD SOUTHWEST CO., Inc.
v. PRUNTY.**

No. 40269.

Feb. 18, 1952.

Rehearing Denied March 24, 1952.

Dickson & Denny, Shreveport, for applicant.

Bullock & Bullock, Shreveport, for respondents.

MOISE, Justice.

The Super-Cold Southwest Company, Inc. of Dallas, Texas, filed suit against the defendant, J. C. Prunty, for the balance due on a chattel mortgage note, and 25% ad·

ditional as attorney's fees, and for recognition and enforcement of the vendor's lien and chattel mortgage, secured by two refrigerator boxes—one for vegetables and one for meats. Defendant, in reconvention, asked that the sale be set aside because of redhibitory vices of the meat case and that he have judgment for the recovery of the sums paid on account of the purchase price, as well as for damages suffered because of the alleged faulty functioning of the meat case.

The district court upheld plaintiff's claim stating that the defendant's recourse was against Hallenberger, the endorser of the note. This judgment was affirmed by the Court of Appeal, 50 So.2d 665, 666. Writs were taken and granted and the matter is now before us.

The record discloses that Hallenberger sold to the defendant by authentic act one secondhand meat display case and one new vegetable case for the price of $2,500.88, defendant paying $460 in cash, and for the balance as evidenced by a note for $2,040.-88, payable in seventeen monthly installments of $105, and one installment of $150.88, secured by a mortgage and vendor's lien on the above-described chattels. Hallenberger endorsed this note without delay and transferred it to the plaintiff.

The defense admits signing the note but denies liability thereon, alleging that the meat display case must be fit for the purposes sold and must be fit to preserve his meat, and urges that after many trials

and tribulations the meat case did not function and he set it aside after notice and bought a new case. He alleges that he sustained losses for which he reconvenes in damages in the sum of $500, to cover spoilage of meats and $1,000 for the loss of patronage. He prays to have the sale set aside because of vices and defects, urging that plaintiff is not "a holder in due course".

We quote, in part, the Court of Appeal's finding in fact:

"Hallenberger describes himself, as regards the sale of the plaintiff's merchandise, as an independent jobber or dealer. His franchise from the plaintiff embraces nine parishes in northwest Louisiana. When he secured an order from a customer, he would advise plaintiff to ship or transport to him, or to the customer's place of business, the merchandise purchased by him. When the merchandise was installed, the sale of it was closed (if partly on credit) by taking a note secured by vendor's lien and mortgage. The note, after the mortgage was recorded in the proper parish, would be transmitted to the plaintiff, who then gave Hallenberger proper credit for the proceeds or remitted same to him.

"It so happens that the defective meat case involved herein was not owned by plaintiff. It was owned by Hallenberger himself and had been so owned for some ten months. It had been sent to plaintiff in

Dallas, Texas, for superficial reconditioning and was in its possession when Hallenberger sold it and the new vegetable case to defendant. Both cases were, at same time, transported from Dallas to Bossier City, Louisiana, and installed at same time. The price of the old case was fixed separate from that of the new one, the two being consolidated in the note. Certainly, as to the old case, in selling it to the defendant, Hallenberger was acting solely for himself and in no wise as the agent or representative of the plaintiff.

"It is shown that no representative of the plaintiff had any part in consummating the sale to the defendant. Hallenberger alone attended to this. He fixed the price and terms of the sale, had the mortgage registered and then forwarded to the plaintiff a copy thereof and the note for re-discount. It is not shown that plaintiff had any real interest · in the transaction save to receive from Hallenberger the price to him of the new case. It was not obligated, so far as the record discloses, to acquire and pay for the note, especially that part of it that represented the price of the old case."

According to the record, the plaintiff, the Super-Cold Southwest Company, Inc., does not manufacture the product sold. It is manufactured by the Super-Cold Corporation of Los Angeles, California. The plaintiff, the Super-Cold Southwest Company, Inc., of Dallas, is the selling agent or selling organization. The comp-

troller for the plaintiff, the Dallas corporation, a Mr. Bownds, was asked the following question on the witness stand: "Q. What was the relation between your company and Mr. Hallenberger with respect to the meat case involved in this suit?"

Mr. Bownds replied: "A. Mr. Hallenberger had traded for this equipment in Shreveport here from someone. He sent it to be reconditioned, to be repainted, the glasses to be reglazed. * * *"

The note in question was discounted on or about Oct. 22, 1948, a short time after the sale. There is in the record a letter dated December 15, 1948 addressed to the Super-Cold Southwest Company, Inc., by J. C. Prunty, defendant, which letter is conclusive of notice to the plaintiff of defects in the meat box. However, such proof comes after the note had been discounted. Further, the record shows that Mr. Prunty called the plaintiff, spoke to someone, presumably the manager or comptroller, and he declared that " * * * they said they didn't have anything to do with it (the box); it was up to Mr. Hallenberger and all they were interested in was the payments. * * *"

The Negotiable Instrument Act (Act No. 64 of 1904) LSA–R.S. 7:59, provides: "Every holder is deemed prima facie to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he

claims acquired the title as holder in due course. But the last mentioned rule does not apply in favor of a party who became bound on the instrument prior to the acquisition of such defective title."

 The facts above quoted convince us that there was no knowledge of the defects until after the note had been discounted. It is, therefore, not necessary for us to pass upon the question of whether plaintiff is presumed to be a holder in due course.

For these reasons, the judgment of the Court of Appeal is affirmed.